# In the United States Court of Federal Claims

Case No. 09-374C
(**FILED:**   February 25, 2010)
**TO BE PUBLISHED**

| | |
|---|---|
| * * * * * * * * * * * * * * * * * * * * * * * * * *   * | |
| WHITE HAWK GROUP, INC.,                         * | Bid Protest; Tucker Act, 28 U.S.C. |
| TODD CONSTRUCTION, LP; and               * | § 1491; Transfer from District Court |
| WHITE HAWK/TODD, A Joint Venture,      * | Pursuant to 28 U.S.C. § 1631; Small |
| *Plaintiffs,*                                              * | Business  Set Aside Procurement; |
|                                                                 * | Size Determination by Small |
| v.                                                              * | Business Administration (SBA); "Size |
|                                                                 * | Protests;" SBA Office of Hearings |
| THE UNITED STATES OF AMERICA**,**        * | and Appeals; Joint Ventures; The 3/2 |
| *Defendant,*                                            * | Rule; Mootness; Standing; Federal |
|                                                                 * | Acquisition Regulation, 48 CFR |
| DMS-ALL STAR JOINT VENTURE,              * | §19.805.2(b)(2). |
| *Intervenor-Defendant*,                           * | |
|                                                                 * | |
| HE & I CONSTRUCTION, INC.,                   * | |
| *Intervenor-Defendant*                           * | |
|                                                                 * | |
| * * * * * * * * * * * * * * * * * * * * * * * * * * | |

**Marvin Laws**, Oklahoma City, OK, for Plaintiff.

**Scott T. Palmer**, Department of Justice, Washington, D.C., for Defendant.  With him on the briefs were **Tony West**, Assistant Attorney General, **Jeanne E. Davidson**, Director, Commercial Litigation Division, and **Donald E. Kinner**, Assistant Director.

**John C. Dulske**, San Antonio, TX, for Intervenor, DMS-All Star Joint Venture. With him on brief were **Joan Kelley Fowler Gluys** and **Bryan Louis Kost**.

**Johnathan Bailey**, San Antonio, TX, for Intervenor, He & I Construction, Inc.

**John Bergen**, Law Clerk.

# OPINION

**BASKIR, Judge.**

This transfer case arises out of a procurement undertaken by the U.S. Department of the Army (Army), to enter into an indefinite delivery, indefinite quantity (ID/IQ) contract for various maintenance and repair services at Fort Sill, Oklahoma. **For the reasons stated below, we dismiss the plaintiffs' Complaint for declaratory judgment and injunctive relief and find in favor of the government.**

## BACKGROUND

The following summary provides background information on the procurement and various administrative and judicial challenges pursued to date by the plaintiff and intervenors. The information is gleaned directly from the administrative records filed in this case by the pertinent federal agencies, the Army and the Small Business Administration (SBA).

On January 12, 2010, the parties filed a Consolidated Statement of Undisputed Facts (CSUF) summarizing those portions of the administrative records upon which they have relied in their briefs. We note that the plaintiffs have conceded the accuracy but not the completeness of the records. In the midst of briefing, White Hawk/Todd requested the opportunity to conduct discovery, and reserved its right to request further supplementation of the administrative records. That request was denied.

## A.   Introduction

On March 9, 2007, the Army issued Solicitation No. W9124J-06-R-0031 in order to procure a broad range of maintenance and repair services for certain real property at Fort Sill, Oklahoma. The Army intended to award an ID/IQ contract, described here as a job order contract (JOC), whereby the installation would procure services on an ongoing basis through task orders. Army Administrative Record (AAR) Tab 4. The JOC contemplated approximately $100 million in projects, including options. *Id.* at 40.

In accordance with the solicitation, proposals were evaluated on price, technical merit and past as well as present performance. This was a 100 percent small business set aside procurement. Pursuant to the approved procurement scheme, therefore, the Army could consider for final award only those contractors who had been approved by the SBA under the SBA Section 8(a) Business Development Program.

During the course of this procurement, White Hawk/Todd received adverse determinations by the SBA which resulted in its loss of 8(a) eligibility. White Hawk/Todd here challenges these determinations by means of a bid protest, a process ill-suited for this purpose, and ultimately fatal to its objective. Although we resolve this case well-short of the merits of plaintiffs' SBA claims, we describe those aspects of this litigation in some detail.

**B.    Role of the Small Business Administration**

(1.)    <u>Section 8(a) and Related Programs</u>:

The Code of Federal Regulations (CFR) governs certain SBA programs designed to aid participation by small business concerns – independently owned and operated businesses which are not dominant in their field of operation – in federal acquisitions.  The regulations set forth size requirements for small business concerns, generally, and for eligibility under the 8(a) program, which provides small businesses competitive access to certain government contracts.  *See* 13 C.F.R.  Parts 121 and 124.  The SBA determines the size of 8(a) concerns in relation to a number of factors, such as average annual receipts and domestic and foreign affiliates.  As a general matter, certain business affiliations may undermine the independent ownership or the annual receipts standards applicable to small business.  Consequently, these affiliations are scrutinized by the SBA in an effort to determine whether businesses should retain their small business preference despite their partnering agreements with other companies.  *See* 13 C.F.R. § 121.103(a); *see also* Federal Acquisition Regulations (FAR), 48 C.F.R. §§ 19.101-102.

Among the SBA-authorized business affiliations is the joint venture.  As a general rule, however, all participants in an 8(a) joint venture must qualify as small. 13 C.F.R. § 124.513(b)(1) and (2); CSUF ¶ 5.  As we describe below, there are limited exceptions to this rule which permit 8(a) contractors to enter into project-specific joint venture agreements with companies that do not meet the applicable size standard.  If the partnering relationship becomes routine and long-standing, the parties jeopardize their disadvantaged small business status.  Accordingly, the SBA monitors these business relationships, and will disapprove a proposed joint venture under certain circumstances where it appears that the relationship is more than it purports to be.

According to the plaintiffs, White Hawk/Todd qualifies for special treatment under a "mentor/protégé" joint venture agreement.  The mentor/protégé program is an SBA program designed to encourage an approved mentor – which is not a small business – to provide managerial, financial and technical assistance in order to improve a small business concern protégé's ability to compete for government contracts.  13 C.F.R. § 124.520; CSUF ¶ 5.  Pursuant to the SBA's regulations, only the protégé must meet the applicable size standards and dollar limits set forth in Title 13.  *See* 13 C.F.R. §§ 124.513, 124.519-520; CSUF ¶¶ 7-8.

(2.)    <u>The 3/2 Rule</u>

In 2004, the SBA regulations pertaining to joint ventures were revised to reflect a limitation known as the "3/2 Rule," which prohibits joint ventures from submitting more than three contract offers over a two-year period.  The regulation defined permissible joint ventures as follows:

> A joint venture is an association of individuals and/or concerns with interests in any degree or proportion by way of contract, express or implied, consorting to engage in and carry out no more than three specific or limited-purpose business ventures for joint profit over a two year period, for which purpose they combine their efforts, property, money, skill, or knowledge, but not on a continuing or permanent basis for conducting business generally.  This means that the joint venture entity cannot submit more than three offers over a two year period, starting from the date of submission of the first offer.

13 C.F.R. § 121.103(h) ("Affiliation Based on Joint Ventures.").

White Hawk/Todd contends that during the review process for these regulatory changes, the SBA operated under an existing policy in which the 3/2 Rule was not applied to joint ventures covered by the mentor/protégé program.  CSUF ¶¶ 6-8.  We do not dwell on this characterization of the SBA's policy.  However, we do note that the administrative record contains an email from an SBA officer consistent with this interpretation of the 3/2 Rule.  S*ee* SAR Tab 76 at 1271.  White Hawk/Todd requests discovery in this area, including depositions of SBA officials, to shed further light on the rule-making process.  As we explain below, however, it is not appropriate for us to address the merits of this argument.

(3.)   <u>CO's Referral of Presumptive Awardee</u>:

In a small business set aside procurement such as this, it is only after the procuring agency has evaluated each of the proposals and arrived at a provisional award decision that the contracting officer turns her focus to the small business eligibility of the successful bidder.  As the SBA regional office informed the Army early on in this procurement:

> At the conclusion of your evaluations, you are to advise the SBA office of the apparent successful offeror.  Your notice should include the firm's name, the anticipated date of the firm's proposal so that determination of eligibility can be made.  Within (5) five business days of that notification, the SBA will confirm the eligibility of the apparent successful offeror to receive the contract award and notify your office in writing of that determination. If the firm is found ineligible, SBA will inform you in writing of the firm's ineligibility and request that you consider the next lowest bid for contract award.

Letter of District Director, SBA Oklahoma District Office (July 26, 2006), AAR Tab 58 at 2463.

(4.)   <u>"Size Protests" Before the SBA</u>

 A size protest is a purely administrative claim before the SBA in which a small business concern competing for an 8(a) set aside objects to the size determination of

another offeror.  The procedures for challenging the SBA's size determination are spelled out in FAR Subpart 19.3 and Part 121 of Title 13 in the CFR.  Despite the similar label, "size protests" bear no relation to bid protests.  It is exclusively the function of the SBA to decide the matter, subject to an administrative appeal process within the agency.  *See* 13 C.F.R. § 121.1101 (describing appeal of size determination to SBA's Office of Hearings and Appeals (OHA)).  This court, for example, "lacks any authority to entertain a size protest."  *See International Management Services, Inc. v. United States*, 80 Fed. Cl. 1, 7 (2008) (citing 13 C.F.R. § 121.1002).  Although the procuring agency has no role in deciding the size protest, the contracting officer has a duty in an 8(a) set aside acquisition to ensure that the contractor awarded the contract satisfies the requisite size requirements.

## C.    The Procurement and its Challenges

### (1.)    Initial Evaluations and SBA Coordination

In April 2007, three offerors responded to the Fort Sill solicitation: a joint venture between White Hawk Group, Inc. and Todd Construction, LP (referred to collectively as White Hawk/Todd); DMS-All Star Joint Venture (DMS-All Star); and finally, a company known as He and I Construction, Inc. (He & I).  AAR Tabs 8-10.  Pursuant to the solicitation, the Army formed a Source Selection Evaluation Board (SSEB) in order to evaluate Parts II-IV of the three proposals: price, technical, and past/present performance, respectively.  AAR Tab 4 at 130-43; Tabs 12, 15-16.

The SBA reviewed and approved DMS-All Star's joint venture agreement on May 22, 2007.  SBA Administrative Record (SAR) Tab 9 at 196.  Subsequently, the Defense Contract Audit Agency reviewed each of the three proposals for accuracy, completeness and price realism, and communicated the results of its analysis to the Army on June 4, 2007.  AAR Tab 13.

On July 7, 2007, White Hawk/Todd provided the SBA a joint venture agreement concerning a procurement unrelated to the Fort Sill JOC.  CSUF ¶ 13.  The SBA informed White Hawk/Todd that the agreement in question "would be the last White Hawk/Todd joint venture that SBA would be able to accept for approval because of the 3/2 rule."  SAR Tab 76 at 1387.  As we observed, the plaintiffs do not believe that the 3/2 rule applies to them since their affiliation fell within the mentor/protégé program.  However, the record is devoid of any White Hawk/Todd response – either White Hawk/Todd failed to press the issue when responding to the other solicitation, or the SBA afforded them no opportunity to respond.  *See* CSUF ¶ 13.

On September 10, 2007, while the Army was still evaluating bid submissions, the plaintiffs forwarded a copy of their joint venture agreement for the JOC to the SBA for review and advance approval.  They took this early initiative ostensibly to accommodate the procuring installation's "tight time line," in the event White Hawk/Todd was selected for the award .  CSUF ¶ 14; *see* SAR Tab 78 at 1581-1610.  The SBA subsequently advised the Army that the agency had not approved the White Hawk/Todd joint venture agreement.  AAR Tab 29 at 1858.  In response, the contracting officer spoke with the

appropriate official at the SBA field office and with his own agency counsel and confirmed that the absence of an approved joint venture agreement would not preclude the plaintiffs from being considered for award at that point in time, although the matter must be resolved before award.  *See* AAR Tab 76 (as supplemented).

On October 2, 2007, the Army requested proposal revisions in conjunction with issuing written discussion questions.  AAR Tab 18.   Among the discussion items forwarded to the plaintiffs was the following:

> Your proposal did not provide proof of the [SBA's] approval of White Hawk/Todd Construction LP joint venture for the [JOC] at Fort Sill OK. The Joint Venture must obtain the approval of the SBA for this requirement prior to award of an 8(a) contract.

AAR Tab 18 at 1152; CSUF ¶ 17.  In response, White Hawk/Todd assured the Army that "[o]ver the course of the last 5 years, the SBA has approved every White Hawk joint venture submitted."  AAR Tab 19 at 1155.  The plaintiffs further noted – somewhat inconsistently – that the Oklahoma SBA field office, in order to avoid consuming its resources evaluating a proposed joint venture that fails to come to fruition, does not review joint venture approval requests until the award of the contract is imminent.  *Id.*

On October 5, 2007, the plaintiffs were advised that the SBA had revised its policy, which in previous years had excepted mentor/protégé program joint ventures from the section 8(a) affiliation rules, the 3/2 Rule, in particular.  CSUF ¶ 18; SAR Tab 76 at 1270.  The plaintiffs had been warned only three months earlier in bidding on a separate contract, that their joint venture agreement for subsequent procurements would not be approved because White Hawk/Todd had just had their third joint venture approved in a two-year period.   SAR Tab 76 at 1387.

(2.)   First Army Evaluation Board

The results of the SSEB were forwarded to the source selection authority (SSA) for final consideration of the proposals' relative merits.  In the decision memorandum dated November 5, 2007, the SSA summarized the proposals as follows:

| Offeror | Proposed Price (Base Period) | Technical/ Management Rating | Adjusted Technical/ Management Rating | Past Performance |
|---|---|---|---|---|
| White Hawk/ Todd | $23,989,950 | Good | Satisfactory | Low Risk |
| He & I | $22,984,800 | Excellent | Satisfactory | Low Risk |
| DMS-All Star | $20,472,850 | Satisfactory | Satisfactory | Low Risk |

*See* AAR Tab 25 at 1825; CSUF ¶ 20.  Upon consideration of the SSEB's evaluation and the price realism analysis, the SSA determined that "the proposal submitted by DMS/All Star JV, offers the best overall value to satisfy the government's stated requirements."  AAR Tab 25 at 1819.  None of the offerors received significantly increased technical or past performance ratings so as to sustain a trade-off award to a higher priced offeror.  The SSA found that "price [had] become, in essence, the appropriate deciding factor for award."  *Id.* at 1827.  White Hawk/Todd was a million dollars higher than the next high bidder, and exceeded the bid of the awardee DMS-All Star by about 20 percent.

On November 30, 2007, the Army notified the offerors that DMS-All Star was the prospective awardee.  AAR Tab 29 at 1853-58.  When the plaintiffs requested a debriefing from the procurement officials concerning the award determination, however, the Army declined the request based on the fact that it had not yet received an SBA-approved joint venture agreement for White Hawk/Todd.  *Id.*; CSUF ¶ 23.

### (3.)   White Hawk/Todd's SBA Proceedings

White Hawk/Todd, on December 7, 2007, formally objected to the SBA's determination that DMS-All Star met the size requirements of the 8(a) set aside procurement.  CSUF ¶ 24; SAR Tab 76 at 1370-74.  White Hawk/Todd also challenged DMS-All Star's status under the mentor/protégé program, pointing out that All Star was already a "mentor" to other "protégé" concerns at the time it submitted its current mentor-protégé agreement for approval.

The SBA promptly dismissed White Hawk/Todd's size protest on December 28, 2007, without addressing the merits of the plaintiffs' objection to DMS-All Star's size.  The SBA found that White Hawk/Todd lacked standing to file a size protest because its joint venture agreement had not been approved by the Oklahoma district office.  According to the ruling of the SBA, White Hawk/Todd's offer in response to the solicitation was not considered for the award "for reasons other than size" and it no longer had an economic interest in the procurement.  SAR Tab 76 at 1384.  The SBA further concluded that questions as to DMS-All Star's mentor/protégé relationship were beyond the scope of the size protest.  *Id.* at 1385.  Finally, the agency found that the "protest failed to set forth specific grounds for the allegation as required in 13 C.F.R. § 121.1007."  *Id.*

The plaintiffs appealed the denial of the size protest to the OHA.  *See* Petition; SAR Tab 26 at 465-73.  The OHA vacated the dismissal of plaintiffs' size protest on February 7, 2008, remanding the matter back to the SBA area office for a size determination and evaluation of DMS-All Star's eligibility to participate in the mentor/protégé program.  CSUF ¶ 29.  The Administrative Judge noted that the Area Office's findings respecting plaintiffs' standing erroneously assumed that the Army's contracting officer had not considered White Hawk/Todd for the award of the contract.  SAR Tab 76 at 1346.

On remand, the SBA's regional office performed another size determination and on March 25, 2008, confirmed DMS-All-Star's status as a small business concern under the pertinent size standard for this procurement. *Id.* at 1361-69. Furthermore, the SBA reviewed DMS-All Star's preexisting mentor-protégé affiliations, as well as DMS's qualifications as a protégé, and subsequently reaffirmed DMS-All-Star's eligibility under the mentor-protégé program. *Id.* at 1365-68.

The plaintiffs appealed this decision to OHA on April 9, 2008. Petition; SAR Tab 76 at 1351-60. However, on May 1, 2008, the OHA dismissed the appeal, concluding that it had, in fact, lacked jurisdiction over questions concerning the mentor-protégé program. In a final decision of the agency, the initial February 7 remand order was vacated. *Id.* at 1415-18. White Hawk/Todd filed a petition for reconsideration, which was subsequently denied by the OHA on June 17, 2008. *Id.* at 1436-41. Following the final decision on its administrative claims at the SBA, White Hawk/Todd pursued the matter in federal district court in Oklahoma.

(4.)   Post-Award Challenges to the Army's Procurement

Between December 2007 and October 2009, He & I and DMS-All Star litigated four GAO bid protests between them. We can draw at least three conclusions from a review of these proceedings: First, White Hawk/Todd played no role in any of them; second, the Army reevaluated White Hawk/Todd on at least three occasions along with the other two offerors, notwithstanding the absence of any SBA approval of the plaintiffs' joint venture; and, finally, White Hawk/Todd's bid was consistently higher than the other two, despite opportunities to revise it.

After the Army announced its intention to award the JOC to DMS-All Star in November 2007, He & I promptly filed a bid protest with the Government Accountability Office (GAO). *See* AAR 31 at 1947-58; CSUF ¶ 25. Because the plaintiffs in the present matter never joined the protest, He & I's specific objections to the Army's decision are not pertinent to this discussion. In any event, the Army took corrective action. It convened a new SSEB and reevaluated the three proposals, thus "render[ing] the protest grounds relating to these issues academic." AAR Tab 31 at 1944; CSUF ¶ 27.

On April 8, 2008, the Army issued revised evaluations for the technical/ management and past performance factors. The new ratings were summarized in a memorandum for record as follows:

| Offeror | Proposed Price (Base Period) | Technical/ Management Rating | Past Performance |
| --- | --- | --- | --- |
| White Hawk/Todd | $23,989,950 | Satisfactory | Low Risk |
| DMS-All Star | $20,984,800 | Marginal | Low Risk |
| He & I | $22,984,800 | Good | Low Risk |

AAR Tab 35 at 2014; CSUF ¶ 30.  (Prices are for base period only.)  The SSA concluded that He & I's proposal, which enjoyed a "good overall rating in Technical/Management Approach" and had an excellent past performance record, "presents the best overall value to the Government."  AAR Tab 35 at 2016.  Once again, White Hawk/Todd was the highest bidder by a significant margin.

Section 8(a) eligibility was not addressed in the body of the memorandum. CSUF ¶ 32; *see also* Price Negotiation Memorandum, AAR Tab 36 at 2021.  The majority of the memorandum compares the price and technical merits of the three proposals, with a mere mention in the summary that the plaintiff "does not have their joint venture approved by the [SBA].")

On July 7, 2008, the Army announced its intent to terminate DMS-All Star's contract and make an award to He & I.  AAR Tab 38 at 2023-26; CSUF ¶ 38.  On that same day, the Army sent its formal request to the SBA for an "eligibility determination" under the Section 8(a) Program with regard to He & I.  AAR Tab 37.  DMS-All Star then filed its own bid protest with the GAO, identifying multiple grounds for relief, none of which pertain to the present case or implicate White Hawk/Todd.  AAR Tab 40.  The Army again opted to take corrective action, halting this second bid protest in its tracks. CSUF ¶ 39.  The protest was dismissed by GAO, and the Army evaluated all the proposals, including the plaintiffs' proposal, for a third time.  CSUF ¶¶ 39; 41.

Following the third SSEB's assessment, the Army held discussions with each of the offerors and gave them the opportunity to revise their proposals accordingly.  AAR Tab 60 at 2490 ¶ 6; CSUF ¶ 39.  White Hawk/Todd participated in discussions with the Army via teleconference on November 17, 2008.   *See* AAR Tab 60 at 2491–92.  They updated their past performance history but declined to revise either their technical proposal or their price.  DMS-All Star extensively revised its proposal and had its technical rating increased from "marginal" to "good," as a result.  *Id.; see* Technical Evaluation Report (Jan. 15, 2009), AAR Tab 51 at 2409 (distinguishing among Excellent-Good-Satisfactory-Marginal-Unsatisfactory ratings).  Likewise, He & I aggressively revised its pricing after discussions.  *Id.* at 2494.

As the following chart reflects, after the third SSEB review, a lengthy period for negotiations, and an opportunity to submit final proposal revisions, White Hawk/Todd cemented its place as the highest price bid with the lowest technical rating, while its two competing offerors enhanced their chances of being selected for the award:

|  | **White Hawk/Todd** | **DMS-All Star** | **He & I** |
|---|---|---|---|
| **Technical** | Satisfactory | Good | Good |
| **Past Performance** | Low Risk | Low Risk | Low Risk |
| **Total Proposed Price** | $119,949,750 | $102,544,250 | $100,263,000 |

Price Negotiation Memorandum (Mar. 16, 2009) (AAR Tab 60 at 2497) (Prices are for base period and options.); *see also* Technical Evaluation Report (Jan. 15, 2009) (AAR Tab 51).

He & I became the prospective awardee once again.  The rationale for the decision was stated concisely, as follows:

> He and I Construction, Inc., proposal received an overall "Good" rating with a lowest price of $100,263,000.  DMS/All Star JV proposal also received a "Good" rating, however, their price of $102,544,250 is higher than He and I Construction, Inc., price.  Furthermore, based upon my analysis of the proposals, He and I Construction, Inc. and DMS/All Star JV ratings were both equal in Technical/ Management Approach (Factor 1) and Past and Present Performance (Factor 2).  In accordance with the solicitation, if the technical proposals and Past and Present Performance (Risk) evaluations are determined to be equal, price could become the determinative selection factor.  In this case, price was the determinative factor and I hereby recommend He and I Construction, Inc., be awarded the contract.

AAR Tab 59 at 2484-85.  On this occasion, unlike in previous memoranda, the SSA did not comment on the absence of an approved joint venture agreement for White Hawk/Todd.  *Compare* Source Selection Decision Document (Apr. 8, 2008); AAR Tab 35 at 2016.

As it had done earlier when DMS-All Star had been chosen for the contract, the Army requested from the SBA a determination of He & I's eligibility under the 8(a) Program on March 31, 2009.  CSUF ¶ 46; AAR Tab 58 at 2462.  The SBA confirmed the contractor's eligibility, after which the Army formally notified all offerors that it intended to award the contract to He & I.  *Id.* at 2465; CSUF ¶ 47.

This announcement triggered a third GAO protest, the second consecutive protest filed by DMS-All Star, which followed a now routine course of events.  AAR Tab 68 at 2612.  Again, White Hawk/Todd played no role in this protest.  And again, the Army promptly rendered the protest moot with its corrective action, which this time entailed reexamining each offeror's bid for the purpose of performing a price realism assessment.  *Id.* On June 26, 2009, the Army notified the parties that upon reevaluation it intended to award the contract to He & I.

On July 6, 2009, DMS-All Star filed its third GAO protest (the fourth GAO protest overall.) AAR Tab 70.  As with the previous GAO proceedings, White Hawk/Todd was not a party to the protest.

(5.)   <u>District Court Proceedings and Transfer Complaint</u>

As the procurement-based legal challenges between the two leading competitors for the JOC continued, White Hawk/Todd pressed its size-related SBA challenges.  In

conjunction with its OHA petitions, White Hawk/Todd challenged the SBA's determinations under the Administrative Procedures Act, filing a Complaint for Declaratory Relief in United States District Court for the Western District of Oklahoma (D.Ct. Compl.).  The complaint named only the SBA as a party; the plaintiffs directed no allegations against the Army, nor did they request any relief specifically directed to the procuring agency.  Rather, the pleadings were aimed exclusively at the SBA's refusal to review White Hawk/Todd's joint venture agreement.  Initially, White Hawk/Todd's APA case was premised on the argument that the SBA's interpretation of its own regulations pertaining to affiliations, the applicability of the 3/2 rule, was arbitrary and capricious.  D.Ct. Compl. at ¶ 14

As of May 28, 2008, the parties had fully briefed dispositive motions in District Court but the case had been stayed pending the conclusion of the various administrative appeals.  CSUF ¶ 37.  Having exhausted all administrative remedies concerning its size protest, plaintiffs amended their District Court complaint on July 30, 2008, adding to the regulatory challenges already before the court objections to DMS-All Star's 8(a) status.  Shortly thereafter, on September 12, 2008, the SBA moved to dismiss the District Court case for lack of subject matter jurisdiction or, alternatively, to transfer the case to the United States Court of Federal Claims under the provisions of 28 U.S.C. § 1631.  CSUF ¶ 43.

On March 4, 2009, the District Court granted the government's motion to transfer the case, finding that the Court of Federal Claims had exclusive jurisdiction over the matter pursuant to the Administrative Dispute Resolution Act of 1996 (ADRA), Pub.L.No. 104-320, 110 Stat. 3870 (codified at 28 U.S.C. § 1491(b)(1) (2006)).  *White Hawk Group, Inc. v. SBA*, No. CIV-08-0038-HE,  slip op. at *2-3 (W.D. Okla. Mar. 4, 2009).  This decision was based on the court's understanding that the plaintiffs' claim "relates to a government agency's alleged violation of a regulation in connection with a procurement within the scope of 1491(b)."  *Id.* at *4.  In other words, the Court read the amended complaint as a bid protest.

The plaintiffs objected to the transfer, arguing that "because the Court of Federal Claims lacks APA jurisdiction, they will be without a remedy if this action is dismissed." *Id.* at *5.   However, they did not appeal the transfer.  Consequently, on July 13, 2009, with the status of the procurement still undetermined, White Hawk/Todd filed its transfer complaint with this Court.

(6.)    Further Bid Protest Activity Between DMS-All Star and He & I

At the time this Court received White Hawk/Todd's transfer complaint, the JOC was stayed as a result of DMS-All Star's third bid protest at GAO.  *See* Defendant's Statement of Findings (Aug. 4, 2009).  This final GAO protest was dismissed on October 9, 2009, leaving intact the June 26, 2009, award to He & I.  Subsequently, on October 28, 2009, DMS All-Star filed its own bid protest in the U.S. Court of Federal Claims.  *DMS All-Star Joint Venture v. United States*, No. 09-737C.  The case was assigned to another judge.  Despite the fact that the two cases share no common questions of material fact or law, White Hawk/Todd moved to consolidate the present

case with DMS All-Star's case.  We denied the request, as did the judge presiding over the DMS All-Star protest.  DMS All-Star's bid protest met the same fate as its protests before the GAO.  The court dismissed the case and granted the government's motion for judgment on the administrative record.  *See DMS All-Star Joint Venture v. United States*, No. 09-737C, 2010 WL 337400 (Fed. Cl. Jan. 26, 2010).

On January 26, 2010, we received notice from the government that on January 22, 2010, the Army formally awarded the JOC to He & I.  Defendant's Notice of Procurement Activity (Jan. 26, 2010).  Attached to the notice are two documents from the contracting officer, each dated January 25, 2010, notifying the two unsuccessful offerors of the Army's decision.  We consider these source selection documents part of the Army's formal administrative record for this procurement.  The contracting officer advised the contractors of the overall rating and price of He & I's proposals relative to their own.  White Hawk/Todd's bid was about 20 percent higher than the He & I bid, and about 18 percent higher than DMS-All Star.  White Hawk/Todd received an overall rating of Satisfactory, whereas the two competing proposals were rated Good.  *Id.* at Ex. 1-2.  In other words, White Hawk/Todd was a distant third in the competition.

## SUMMARY OF PLAINTIFFS' CLAIMS

In its transfer complaint, White Hawk/Todd asserts two broad claims, both of which are directed at the SBA, not at the procuring agency.  First, the plaintiffs challenge the SBA's refusal to consider the joint venture agreement submitted by White Hawk/Todd in connection with the JOC solicitation.  Transfer Compl. ¶ 27 (A)-(D).  Second, the plaintiffs challenge the SBA's size determination respecting DMS-All Star.  Or, more particularly, they challenge "the wrongful decisions of SBA and the OHA concerning the size protest."  Transfer Compl. ¶ 25.

## DISCUSSION

### A.   Applicable Legal Standards

Pursuant to 28 U.S.C. § 1491(b)(1), the United States Court of Federal Claims has jurisdiction:

> to render judgment on an action by an interested party objecting to a solicitation by a federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation *in connection with a procurement or proposed procurement*.

*Id.* (emphasis added).

As the procedural history of plaintiffs' claims makes clear, White Hawk/Todd challenges the Army's procurement decisions only indirectly.  The plaintiffs' primary objections relate to determinations made by a separate agency, which has no direct role either in the procurement itself or in administering the resulting contract.  Because

the Army's solicitation is limited to small businesses, however, the status of the contractors as determined by the SBA is an essential element of the competition. Accordingly, it can be said that the challenged aspects of the SBA's action are "in connection with" the Fort Sill JOC.  28 U.S.C. § 1491(b)(1).

In exercising our bid protest jurisdiction, we review a procuring agency's determinations under those standards set forth in the Administrative Procedures Act (APA).  *See* 28 U.S.C.  § 1491(b)(4) (incorporating 5 U.S.C. § 706); *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1332 (Fed. Cir. 2001).  The standard of review under the APA is narrow.  *Citizens to Preserve Overton Park, Inc. v. Volpe*,  401 U.S. 402, 416 (1971).  We accord the agency deference, only setting aside an action or decision that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C.  § 706(2)(A); *Fru-Con Constr. Co., Inc. v. United States*, 57 Fed. Cl. 483, 485 (2003).  This analysis considers whether: "(1) there was subjective bad faith on the part of procurement officials; (2) there was a reasonable basis for the procurement decision; (3) the procuring officials abused their discretion; and (4) pertinent statutes or regulations were violated."  *Metric Sys. Corp. v. United States*, 42 Fed. Cl. 306, 310 (1998) (citing *Keco Indus., Inc. v. United States*, 492 F.2d 1200, 1203-04 (Ct. Cl. 1974)).

In alleging error the protestor must do more than identify circumstances where the agency made a mistake.  When challenging a procurement decision, for example, the protestor must establish that such a mistake was so excessive as to fall outside the decision-maker's ambit of discretion.  In other words, a protestor must demonstrate that there was no rational basis for the agency's determination.  *Banknote Corp. of America v. United States*, 365 F.3d 1345, 1351 (Fed. Cir. 2004) (quoting *Garufi*, 238 F.3d at 1332-33)*; see also Baird  Corp. v. United States*, 1 Cl. Ct. 662, 664 (1983).  Similarly, when the protestor claims the agency's actions are not in accordance with law, it must establish a "clear and prejudicial violation of applicable statutes or regulations."  *Banknote Corp.*, 365 F.3d at 1351 (quoting *Garufi*, 238 F.3d at 1333).

## B.    Mootness

As an initial matter, we note that at least one of plaintiffs' claims was rendered moot by the Army's decision to reverse its award decision and select He & I for the award of the JOC.

White Hawk/Todd alleged that the "SBA's final decision entered on June 17, 2008, by the OHA was arbitrary, capricious, an abuse of discretion and otherwise contrary to law" in several respects, as detailed in its transfer complaint.  Transfer Compl. ¶ 28 (A)-(F).  These allegations surround the SBA's eligibility determinations with then prospective awardee, DMS-All Star.  The government moved to dismiss the claim as moot, but the plaintiff resisted the motion based on the DMS-All Star's continuing efforts to secure the contract award.  Following the adverse GAO decision, however, the plaintiffs conceded that their size protest pertaining to the SBA's evaluation of DMS-All Star became moot.  *See* Plaintiffs' Response to Intervenor's Motion to Dismiss (Nov. 23, 2009) ("To the extent DMS-All Star seeks dismissal of

White Hawk/Todd's claims involving the size protest of DMS-All Star, White Hawk/Todd concedes that the claim should be dismissed as moot."); Advisory to the Court (Oct. 13, 2009) at 1 ("with [the GAO] decision, there is no longer any pending matter before GAO which challenges the award to He & I."). (Shortly after White Hawk/Todd appeared to abandon this claim, DMS-All Star filed a bid protest in this Court, seeking to enjoin the Army from terminating its contract.)

The mootness doctrine "looks primarily to the relationship between past events and the present challenge in order to determine whether there remains a 'case or controversy' that meets the article III test of justiciability." L. TRIBE, AMERICAN CONSTITUTIONAL LAW 62 (1988). A case is moot when there is no expectation that the complained of activity will recur and "interim relief or events have completely irrevocably eradicated the effects of the alleged violation." *County of Los Angeles v. Davis*, 440 U.S. 625, 635 (1979).

Under the governing procedure for the Section 8(a) set aside procurement, the SBA only validates the contractor's size and eligibility once it is determined by the procuring agency that the contractor's proposal is going to be awarded the contract. Consequently, questions pertaining to the SBA's size determination or the OHA's findings pertaining to the appeal of the size protest as regards DMS-All Star, do not give rise to a case or controversy *unless* the Army intends to award the contract to DMS-All Star. The Army decided in July 2008 to award the JOC to He & I, and it confirmed that decision several times over the course of the last year and a half. As we have indicated, another U.S. Court of Federal Claims judge recently upheld the Army's decision and denied DMS-All Star's final attempt to invalidate the award to He & I. See *DMS All-Star Joint Venture v. United States*, No. 09-737C, 2010 WL 337400 (Fed. Cl. Jan. 26, 2010). The contract has now been formally awarded to He & I. Defendant's Notice of Procurement Activity (Jan. 26, 2010).

Accordingly, we decline to decide White Hawk/Todd's various challenges respecting DMS-All Star's status in the present competition. As the plaintiffs have conceded, this claim should be dismissed as moot. We turn our attention now to another element of justiciability: White Hawk/Todd's standing to pursue their remaining claims.

## C.    Standing and Prejudice

All that remains in this case is plaintiffs' claim that the SBA erroneously applied its rules on affiliations when it refused to approve White Hawk/Todd's joint venture agreement. From the inception of its claims in district court, White Hawk/Todd has approached this matter as an administrative claim and not as a bid protest. Although we apply section 706 of the APA to procurement decisions under the Tucker Act's bid protest provisions, general APA review of agency actions is not available in this court. 28 U.S.C. § 1491(b)(4); *Lion Raisins, Inc. v. United States*, 416 F.3d 1356, 1370 n.11 (Fed. Cir. 2005)(citing *Crocker v. United States*, 125 F.3d 1475, 1476 (Fed. Cir. 1997));

*see generally Am. Fed'n of Gov. Employees v. United States*, 258 F.3d 1294, 1302 (Fed. Cir. 2001)(reviewing legislative history of ADRA), *cert. denied*, 534 U.S. 1113 (2002).

A party objecting to the procurement decision must be an "interested party" under Section 1491(b)(1).  An interested party is an "actual or prospective bidder or offeror whose direct economic interest would be affected by the award of the contract or by failure to award the contract."  *Info. Tech. & Applications Corp. v. United States*, 316 F.3d 1312, 1319 (Fed. Cir. 2003) (quoting *Am. Fed'n*, 258 F.3d at 1302). Additionally, when challenging the procurement on the basis of a regulatory violation, as in the present case, the plaintiffs must show not only that significant errors were committed but also that these errors were prejudicial.  *Advanced Data Concepts, Inc. v. United States*, 216 F.3d 1054, 1057 (Fed. Cir. 2000).  In order to meet the prejudice test in a post award context White Hawk/ Todd is required to establish that "but for the error, [they] would have had a substantial chance of securing the contract."  *Labatt Food Serv., Inc. v. United States*, 577 F.3d 1375, 1378 (Fed. Cir. 2009) (citations omitted);  *Alfa Laval Separation, Inc. v. United States*, 175 F.3d 1365, 1367 (Fed. Cir. 1999).

The United States Court of Appeals for the Federal Circuit has held that trial courts should address the prejudice issue in bid protest cases as a threshold matter, thus elevating the requirement to one of standing.  *See Info. Tech.*, 316 F.3d at 1319 ("[B]ecause the question of prejudice goes directly to the question of standing, the prejudice issue must be reached before addressing the merits."); *Myers Investigative and Security Services, Inc. v. United States*, 275 F.3d 1366, 1369 (Fed. Cir. 2002) ("[P]rejudice (or injury) is a necessary element of standing.").  Thus we "consider [plaintiffs'] plausible allegations and merely ask whether, if they turn out to be correct, [the plaintiffs] had more than an insubstantial chance of receiving the award."  *Hamilton Sundstrand Power Sys. v. United States*, 75 Fed. Cl. 512, 515 (2007).

The administrative record categorically demonstrates that White Hawk/Todd's SBA troubles played no role in the Army's decision to award the JOC to DMS-All Star, initially, and subsequently to He & I.  Under the prescribed procedures, the Army first makes its award decision and only then does the contractor's eligibility factor in the process.

Eligibility based on section 8(a) program criteria is determined in accordance with FAR § 19.805-2(b).  That regulation provides in relevant part:

> In negotiated acquisition, the SBA will determine eligibility *when the successful offeror has been established by the agency* and the contract transmitted for signature unless a referral has been made under 19.809, in which case the SBA will determine eligibility at that point.

48 C.F.R. § 19.805-2(b)(2) (emphasis added).  The SBA district office confirmed this procedure when it informed the Army that "[a]t the conclusion of your evaluations, you

are to advise the SBA office of the apparent successful offeror ... so that determination of eligibility can be made."  AAR Tab 58 at 2463.

The Army was not required to consider the status of the plaintiffs' joint venture agreement unless and until White Hawk/Todd became the apparent successful offeror. It is quite apparent that the plaintiffs recognized this to be the case, since their request to the SBA was premised on the understanding that the Army was "nearing an award determination," and was provisionally submitted "should we be the successful offeror." SAR Tab 78 at 1581.  On the whole, the Army's actions in this case were consistent with the FAR.  The plaintiffs' eligibility never matured into a genuine issue during the competition for the JOC.

White Hawk/Todd avers that the SBA's approval of the joint venture agreement "was a critical requirement and had a profound impact" on the Army's decision to award the JOC to DMS-All Star (at least initially) over White Hawk/Todd.  Plaintiffs' Objection to SBA's Motion to Dismiss at 11.  The plaintiffs' hyperbole aside, to the extent the Army acknowledged this missing piece of White Hawk/Todd's small business eligibility, it did not alter the course of events in this case.

First, the record establishes that White Hawk/Todd was repeatedly evaluated by the SSEB, notwithstanding the absence of an approved joint venture agreement. Indeed there has been no allegation that the SSEB considered the issue in arriving at its technical/ management and performance risk ratings.  The SSEB's initial ratings were made prior in time to the SBA's determination.  As for subsequent reevaluations -- performed as part of the Army's campaign of corrective action stemming from the GAO protests – White Hawk/Todd has neither alleged nor proven that the SSEB factored the SBA's action into its evaluation.  Moreover, the technical rating for White Hawk/Todd remained constant throughout all four reviews.  The plaintiffs have not challenged the substantive evaluations of their own proposal (except insofar as they disagreed with the Army's "satisfactory" ranking during discussions), nor have they challenged the evaluations of either He & I or DMS-All Star.

Nor can the plaintiffs demonstrate that the absence of an approved joint venture affected the Army's evaluation of the price factor.  Early in the process, and certainly after the opportunity was given for the offerors to submit revised proposals, the competition for the JOC had become a race between the two most competitive contractors, DMS-All Star and He & I.  Initially, the Army selected DMS-All Star, thus setting off the series of GAO protest between DMS-All Star and He & I.  Following discussions, the source selection authority was convinced that He & I's proposal represented the best value to the Army.  AAR Tab 59 at 2484-85 ("In this case, price was the determinative factor and I hereby recommend He and I Construction, Inc., be awarded the contract.")

This is not to say that the Army was unaware of the SBA's decision respecting White Hawk/Todd.  According to the administrative record of the procurement, the plaintiffs were denied a debriefing after the first award to DMS-All Star in November 2007.  Moreover, the basis for this decision was the absence of an SBA approved joint

venture agreement.  However, the plaintiffs did not object to the denial of a debriefing.
Indeed, the debriefing was soon overtaken by events when the GAO protests
commenced.  Soon thereafter all three contractors participated in discussions,
submitted revised proposals, and were subsequently evaluated several more times over
the course of the next two years.

The plaintiffs argue vaguely, "[t]o even suggest that SBA's disqualification of
White Hawk/Todd had no bearing on the Army's selection of a contractor is clearly at
odds with what little record had been provided."  Plaintiffs' Objection to SBA's Motion to
Dismiss at 14.  We disagree.  Despite the inevitable disqualification of White
Hawk/Todd, the Army continued to give full and fair consideration to its proposal.
Notwithstanding the plaintiffs' unsupported allegations to the contrary, the conspicuous
absence of an approved joint venture agreement did not influence the award decision.
It is apparent that the Army accepted the plaintiffs' explanation that "the Oklahoma
SBA's policy has not allowed the submission of a joint venture approval request until an
award is eminent."  White Hawk/Todd Response to Discussion Letter (Oct. 8, 2007);
AAR Tab 19 at 1155.  After consulting the SBA field office and Army counsel the
contracting officer was satisfied that the lack of a joint venture agreement would not
affect White Hawk/Todd's consideration for the JOC at that point in time, although it
certainly would prevent the Army from making an award to White Hawk/Todd in the
end.  *See* Email Correspondence of Attorney-Advisor Bruce Topletz (Sept. 19, 2007);
Contracting Officer's "Memo to File" (Sept. 18, 2007); AAR Tab 76 at 2713-14.

The plaintiffs' entire rebuttal to the government's motion to dismiss rests on
various decisional documents which comment on White Hawk/Todd's SBA status.
Read in context, however, these comments merely observe that the plaintiffs, other
than being higher in price than the other two offerors, also did not obtain the SBA
approval required to perform the contract.  *See* AAR Tab 18 at 1152 ("The Joint
Venture must obtain the approval of the SBA for this requirement prior to award of an
8(a) contract."); AAR Tab 35 at 2016 ("White Hawk/Todd does not have their joint
venture approved by the Small Business Administration and is not eligible for award.");
AAR Tab 36 at 2021 ("White Hawk/Todd does not have their joint venture approved by
the [SBA].  Per Ms. Vanessa Woodfork, SBA Business Development Specialist, the
joint venture will not be approved.  Without its joint venture approved, White Hawk/Todd
is not eligible for award.")

Irrespective of the plaintiffs' failure to obtain an approved joint venture from the
SBA, a comparison of the three proposals persuades us that White Hawk/Todd's
chance of securing the award of the JOC was insubstantial.  *Info. Tech.*, 316 F.3d at
1319; *Labatt*, 577 F.3d at 1378; *Alfa Laval*, 175 F.3d at 1367.  The plaintiffs' proposal
was consistently ranked last among the proposals.  Its price was consistently 20
percent higher than the lowest bid.  Over the contract's entire option period, plaintiffs'
performance would cost the government almost $20 million more than He & I and over
$17 million more than the next best offer submitted by DMS-All Star.  Furthermore, its
technical/management proposal was deemed merely "satisfactory," whereas the
proposals of its two competitors were rated "good."  Under the technical evaluation
scheme for this solicitation, a "satisfactory" rating is defined in the following manner:

Proposal demonstrates AN ACCEPTABLE understanding of requirements.  The proposal has few or no strengths.  The proposal may contain both strengths and weaknesses but the weaknesses must not offset the strengths.  The proposal cannot contain any deficiencies.  The proposal has a fair probability of meeting the requirements with a low to moderate risk to the Government.

AAR Tab 51 at 2409.   White Hawk/Todd was given the opportunity to revise its proposal and chose not to do so.

In summary, we find that the plaintiffs fail the prejudice test based on its inferior standing in the competition.  Moreover, the issue of White Hawk/Todd's eligibility under the SBA's size restrictions was not a factor in its failure to receive the award, nor was it a factor in its being ranked third among the three proposals.

## CONCLUSION

We conclude that White Hawk/Todd lacks standing to pursue its bid protest. Accordingly, the Clerk of the Court is directed to **dismiss** the plaintiffs' complaint for lack of subject matter jurisdiction and enter judgment in favor of the defendant.  Parties are to bear their own costs.

**IT IS SO ORDERED.**

 s/ Lawrence M. Baskir  
LAWRENCE M. BASKIR  
Judge